IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: MONITRONICS
INTERNATIONAL, INC.,
TELEPHONE CONSUMER
PROTECTION ACT LITIGATION

MDL No. 1:13-md-2493

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**THIS DOCUMENT RELATES TO CASE No. 5:11-cv-90**

## ORDER/OPINION

This matter is before the Court pursuant to Plaintiff Diana Mey's ("Mey") Motion to Compel (Docket No. 205), filed on November 14, 2013. Defendants Monitronics International, Inc. ("Monitronics") and UTC Fire & Security Americas Corporation, Inc. ("UTC") filed responses on December 3, 2013. (Docket Nos. 209 and 210.) Mey filed a reply on December 10, 2013 (Docket No. 216.) This matter was referred to the undersigned by United States District Judge Irene M. Keeley on November 15, 2013. (Docket No. 206.)

### I.   Relevant Procedural History

On May 11, 2011, Mey filed a Complaint in the Circuit Court of Ohio County, West Virginia, alleging violations by Defendants of the Telephone Consumer Protection Act ('TCPA"), 47 U.S.C. § 227, and its implementing regulations adopted by the Federal Communications Commission ("FCC"). Plaintiff seeks certification of this action as a nationwide class action. The case was removed to this Court by Defendants on June 24, 2011.

Mey alleges that Versatile Marketing Solutions ("VMS") acting on behalf of Monitronics and UTC, telephoned her multiple times between November 16, 2009, and December 20, 2011, despite the fact that she had placed her telephone number on the national Do Not Call Registry ("the Registry"). (Docket No. 217 at 7-11.) She argues that these calls violated the TCPA's prohibition

against calls to the Registry's participants, and that, even though Monitronics and UTC did not physically place the calls themselves, they are vicariously liable under the TCPA because VMS, or VMS' agents, placed the calls on their behalf. (Id. at 5-6.) Mey further alleges that all Defendants committed both negligent and knowing violations of the TCPA's provisions. (Id. at 14-15.)

In January 2012, both Monitronics and UTC filed motions for summary judgment on the issue of whether the phrase "on behalf of," located in 47 U.S.C. § 227(c)(5), exposed them to TCPA liability when the parties did not dispute that they did not physically place the calls to Mey themselves. (Docket Nos. 34 and 35.) Following responses and replies, United States District Judge Keeley stayed this case on May 4, 2012, after being advised that the FCC would soon issue a Declaratory Ruling on the issue of the extent of "on behalf of" liability under the TCPA. (Docket No. 127.) A year later, on May 9, 2013, Judge Keeley lifted the stay (Docket No. 159), and the FCC issued its Declaratory Ruling. See In re Joint Petition Filed By DISH Network, LLC, et al., 28 F.C.C. Rcd. 6574 (May 9, 2013) ("In re Joint Petition"). After supplemental briefing on the effect of the Declaratory Ruling, on August 14, 2013, Judge Keeley issued a Memorandum Opinion and Order denying Monitronics' and UTC's motions for summary judgment. Mey v. Monitronics Intern., Inc., __ F. Supp. 2d __, 2013 WL 4105430 (N.D. W. Va. 2013) (Docket No. 171).

As noted by Judge Keeley, the FCC clarified "on behalf of" liability by stating that, "'while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.'" Mey, 2013 WL 4105430, at *4. Applying the Declaratory Ruling, Judge Keeley ruled that the fact that both Monitronics and UTC have agreements with VMS allowing

2

VMS to holds itself out as an "authorized dealer" of their products "could lead a reasonable finder of fact to conclude that UTC and Monitronics cloaked VMS with the apparent authority to act on their behalf, thus exposing them to liability under § 227(c)." Id. at *5.

Judge Keeley also denied Monitronics and UTCFS' motions for summary judgment because of Mey's affidavit stating that "due to the limited scope of discovery permitted by the Court, she was unable to obtain information related to the ratification theory of vicarious liability." Id. at *6. As Judge Keeley noted, the Court "precluded discovery on '[w]hat actions, if any, Defendants take if consumers who have placed their telephone numbers on any state or federal "Do Not Call" lists file a verbal or written complaint with Defendant or any of its authorized dealers or authorized marketers about being contacted by Defendants or anyone purporting to be an authorized dealer or authorized marketer.'" Id.

Subsequently, Judge Keeley ordered that written discovery continue in this matter. (Docket No. 204.) Having failed in "good faith negotiations," Mey filed the subject motion to compel.

## II. Disputed Discovery Requests

Mey asks that the Court compel Monitronics and UTC to respond fully to the following requests:

> **Interrogatory No. 1:** Describe in detail all actions you have taken (*e.g.,* training provided, seminars, investigations, responses to complaints, disciplinary measures) to ensure that your authorized dealers who use telemarketing to generate customers comply with the TCPA and state telemarketing laws.
>
> **RFP No. 1:** Produce all documents concerning actions you have taken (*e.g.,* training provided, seminars, investigations, responses to complaints, disciplinary measures) to ensure that your authorized dealers who use telemarketing to generate customers comply with the TCPA and state telemarketing laws.
>
> **RFP No. 2:** Produce all documents describing or relating to written or verbal complaints of illegal telemarketing.

3

**RFP No. 3:** Produce all documents concerning compliance with the TCPA and state telemarketing laws.

**RFP No. 4:** Produce all documents concerning your knowledge of allegations of illegal telemarketing by your authorized dealers.

**RFP No. 5:** Produce all documents concerning awards you provided to any authorized dealer about whom you received telemarketing complaints.

**RFP No. 6:** With respect to companies related to Jasjit Gotra (*e.g.,* VMS and Alliance Security), produce all documents

   a. That concern telemarketing complaints, and responses to those complaints, involving the companies;

   b. That concern this litigation;

   c. That concern your efforts to ensure that the companies comply with the TCPA and state telemarketing laws;

   d. That concern penalties or disciplinary actions you have taken relating to telemarketing and noncompliance with the TCPA and state telemarketing laws;

   e. That may demonstrate your knowledge of the companies' allegedly unlawful telemarketing;

   f. That relate to agreements and financial arrangements with the companies;

   g. That concern marketing agreements between you and the companies; and

   h. That reflect compensation paid to the companies.

(Docket No. 205 at 3-4.)

With respect to these requests, both Monitronics and UTC objected because they sought information about all authorized dealers, not just the dealers at issue in this matter.[1] (Id. at 4; see

---

[1]Monitronics and UTC both objected on a number of other grounds; however, Mey asserts that those were resolved during counsels' meet and confer pursuant to Fed. R. Civ. P.

also Docket No. 205-1 at 1-9; Docket No. 205-2 at 1-12.)

### III. Contentions of the Parties

Mey contends that the Court should overrule the Defendants' objection for the following reasons:

1. Because VMS and its agents frequently refused to identify themselves as calling from VMS, Defendants' objections may prevent Plaintiff from obtaining complaint information regarding VMS telemarketing.

2. Complaints regarding other dealers are relevant to whether UTC's and Monitronics' alleged TCPA violations were willful or knowing.

3. Complaints regarding other dealers is relevant under the applicable standard for determining vicarious liability.

(Docket No. 205 at 5-11.)

UTC argues that the Court should deny Mey's motion to compel because:

1. UTCFS's objections will not prevent Plaintiff from obtaining complaint information regarding VMS's telemarketing.

2. Under Plaintiff's theory of the case, whether UTCFS's actions were willful or knowing is irrelevant and complaints regarding other dealers will not lead to the discovery of relevant evidence.

3. Complaints regarding other dealers are not relevant to determining vicarious liability.

(Docket No. 209 at 3-8.)

Monitronics joins in UTC's arguments and also argues that the Court should deny Mey's motion because:

1. Plaintiff's primary argument is at best speculative and does not support the relief sought.

---

37(a)(1) and L. R. Civ. P. 37.02(a)(3).

2. Complaints about other dealers are not relevant to Plaintiff's claims against VMS.

3. Discovery related to complaints about dealers other than VMS is not relevant to Plaintiff's vicarious liability theory.

Monitronics also alleges that Mey's requests are not limited temporally to the time period covered by the class allegations and that it is not a "seller" under the TCPA such that the FCC's Declaratory Ruling is inapplicable to it. (Docket No. 210 at 4-9.)

In her reply, Mey alleges that:

1. In her Order denying the Defendants' Motion for Summary Judgment, Judge Keeley stated that the requested complaints are "highly germane to the issue of whether Monitronics or VMS ratified the alleged violations of VMS."

2. Complaints from entities not specifically identified as VMS are calculated to lead to the discovery of admissible evidence.

3. The Defendants are incorrect that they needed to physically dial the telemarketing calls at issue in order for their TCPA violations to be willful or knowing.

4. Monitronics is incorrect that Plaintiff's discovery seeks information that is outside of the putative class period.

5. Monitronics' argument regarding the FCC Declaratory Ruling has no bearing on Plaintiff's Motion to Compel.

(Docket No. 216 at 1-6.)

## **IV. Discussion**

Fed. R. Civ. P. 26(b)(1) provides:

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Information sought through discovery must be relevant to the issues in the action or useful in

uncovering the existence of information relevant to those issues. See In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1189 (10th Cir. 2009). "The scope and conduct of discovery . . . are within the sound discretion of the district court." Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988). When a motion to compel discovery is filed, the party opposing the motion bears the burden of showing why it should not be granted. See Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

*A.    Temporal Scope*

Monitronics objects to the discovery requests set forth above by first alleging that they "are not even temporally limited to the time period covered by the class allegations (i.e., "within the four years prior to the filing of the initial Complaint"). (Docket No. 210 at 4.) The undersigned cannot agree. Mey's Second Set of Interrogatories and Requests for Production clearly stated that the "time frame for all discovery requests is May 18, 2007 through the present." (Docket No. 216-1 at 2.) The statute of limitations for claims under the TCPA is four years. See Pasco v. Protus IP Solutions, Inc., 826 F. Supp. 2d 825, 842 (D. Md. 2011) (citing 28 U.S.C. § 1658(a)) (federal "catch-all" limitations statute providing that an "action may not be commenced later than four years after the cause of action accrues"); see also Donaca v. DISH Network, L.L.C., Civ. No. 11-cv-02910-RBJ, 2012 WL 3590765, at *1 (D. Colo. Aug. 20, 2012) (noting that the limitations period for TCPA claims is four years). Mey filed her initial Complaint on May 18, 2011; therefore, her request for discovery from May 18, 2007 encompasses exactly four years prior to the filing of her complaint. See Pasco, 826 F. Supp. 2d at 842. Accordingly, the undersigned does not find that the temporal scope of the discovery requests at issue was overly broad.

B.  *Law of the Case*

The undersigned also cannot agree with Monitronics that it is not a "seller" such that the TCPA does not apply to its conduct. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009). Judge Keeley, in her Memorandum Opinion denying the Defendants' motions for summary judgment, noted that "seller" under the TCPA "'means the person or entity **on whose behalf** a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.'" Mey, 2013 WL 4105430, at *6 (quoting 47 C.F.R. § 64.1200(f)(9)). Using this definition, Judge Keeley determined that both Monitronics and UTC could not evade liability under the TCPA by arguing that they are not sellers. Id. Accordingly, because Monitronics has already been declared to be a "seller" within the ambit of the TCPA, the undersigned shall not revisit that decision in the guise of a discovery objection.

C.  *Relevancy*

  1.  **"Willful and Knowing"**

As noted above, Mey contends that complaints and information regarding other dealers are relevant to whether Monitronics' and UTC's alleged violations of the TCPA were willful and knowing. (Docket No. 205 at 9-10.) UTC and Monitronics both argue that this is not so. As UTC states, "[u]nder Plaintiff's theories, whether UTCFS knew or should have known about VMS's actions may be relevant to whether VMS was an agent of UTCFS, but under that theory, it is *not*

relevant to whether UTCFS willfully or knowingly violated the TCPA." (Docket No. 209 at 6.)

The FCC's declaratory ruling made clear that "even when a seller does not 'initiate' a call under the TCPA . . . it may be held vicariously liable for certain third-party telemarketing calls . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." In re Joint Petition, 28 F.C.C. Rcd. at ¶ 28. There is a split of authority in the courts as to what constitutes a knowing and willful violation of the TCPA. Some courts have held that a defendant must have known that its actions were a violation of the TCPA. See, e.g., Texas v. Am. Blastfax, Inc.., 164 F. Supp. 2d 829, 899-901 (W.D. Tex. 2001) (awarding treble damages after finding that "the defendants were well-aware of the TCPA when they began sending unsolicited intrastate fax advertisements in Texas in 1997"); Mfgs Auto Leasing, Inc. v. Autoflex Leasing, Inc., 139 S.W.3d 342, 346-47 (Tex. Ct. App. 2004) ("[T]he TCPA is willfully or knowingly violated when the defendant knows of the TCPA's prohibitions, knows he does not have permission to send a fax . . . and sends it anyway."). Others have held that knowledge of the TCPA itself is not necessary. See, e.g., Stewart v. Regent Aset Mgmt. Solutions, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *6-7 (N.D. Ga. May 4, 2011); Sengenberger v. Credit Control Svcs., No. 09 C 2796, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010); Am. Home Servs., Inc. v. A Fast Sign Co., 322 Ga. App. 791, 796, 747 S.E.2d 205, 209 (Ga. Ct. App. 2013); Charvat v. Ryan, 116 Ohio. St. 3d 394, 399-400, 879 N.E.2d 765, 770-71 (Ohio 2007). At least one court has held that knowledge of the TCPA is not required to prove willfulness but is necessary to show that the defendant's actions were performed "knowingly." See Covington & Burling v. Int'l Mktg. & Research, Inc., No. CIV. A. 01-0004360, 2003 WL 21384825, at *8 (D.C. Super. Ct. Apr. 17, 2003). The FCC itself "has interpreted 'willful or knowing' under the Telecommunications Act (of which

9

the TCPA is a part), as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." Am. Blastfax, Inc., 164 F. Supp. 2d at 899; see also In re Dynasty Mortgage, L.L.C., 22 F.C.C. Rcd. 9453, 9470 n.86 (May 14, 2007) (citations omitted) ("[w]illful . . . means that the violator knew that he was doing the act in question . . . . A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.").

As noted above, Monitronics and UTC argue that materials and complaints regarding other dealers are not relevant to Mey's case because, since they did not physically make the telephone calls, they cannot be held liable for willful and knowing violations of the TCPA. They also argue that whether they violated the TCPA willfully and knowingly is irrelevant because Mey is not alleging that they were directly liable for the telephone calls. The undersigned cannot agree. As an initial matter, Mey's most recent amended complaint alleges that all defendants, not just VMS, knowingly violated the TCPA's provisions. (Docket No. 217 at 14-15.) Furthermore, the Georgia Court of Appeals recently held a seller liable for willful and knowing violations of the TCPA even though an advertising company, not the seller itself, sent advertising faxes on the seller's behalf. Am. Home Servs, Inc., 322 Ga. App. at 209, 747 S.E.2d at 796. Given this, the undersigned finds that the information included in the disputed discovery requests is relevant to Mey's case. Regardless of what Mey must demonstrate to prove her claim that both Monitronics and UTC willfully and knowingly violated the TCPA, the requested discovery is relevant to whether both Monitronics and UTC either were aware of the TCPA or were aware that their dealers, including VMS, were violating the TCPA and whether they took action to stop such alleged violations.

**2.    Vicarious Liability**

As noted above, Mey also contends that complaints and information regarding other dealers is relevant for determining whether Monitronics and UTC can be held vicariously liable for VMS' alleged violations of the TCPA. (Docket No. 205 at 10-11.) Specifically, Mey argues that this information is relevant to her theory that Monitronics and UTC ratified the alleged violations committed by VMS. (Docket No. 216 at 1-2.) Monitronics and UTC both contend that this information is not relevant. (Docket No. 209 at 7-8; Docket No. 210 at 7-9.)

As Judge Keeley noted in her Memorandum Opinion and Order denying Monitronics' and UTC's motions for summary judgment, nothing "suggest[s] the [FCC's] Declaratory Ruling is based on an impermissible construction of the TCPA." Mey, 2013 WL 4105430, at *5. As the FCC noted, sellers "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In re Joint Petition, 28 F.C.C. Rcd. at 6574. Vicarious liability, however, does not require proof of a formal agency relationship; instead, a plaintiff may use principles of apparent authority and ratification to establish such liability. Id. at 6584. With regards to ratification, "a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." Id. at 6592.

In her Memorandum Opinion and Order denying Monitronics' and UTC's motions for summary judgment, Judge Keeley noted that Mey was unable to obtain information related to ratification because the Court had limited the scope of discovery. Mey, 2013 WL 4105430, at *6. As Judge Keeley stated:

> [T]he Court precluded discovery on '[w]hat actions, if any, Defendants take if consumers who have placed their telephone numbers on any state or federal "Do Not Call" lists file a verbal or written complaint with Defendant or any of its authorized dealers or authorized marketers about being contacted by Defendants or anyone purporting to be an authorized dealer or authorized marketer.

Id. Judge Keeley stated that such information was "highly germane" as to whether Monitronics and UTC ratified the alleged violations of the TCPA by VMS. Id. Notably, Judge Keeley did not note that such information should be limited to information concerning VMS and its agents.

Given these conclusions, the undersigned finds that the requested discovery is relevant to Mey's claims that Monitronics and UTC are vicariously liable for VMS's alleged violations. Specifically, such information is relevant to Mey's theory of ratification. For example, information regarding other dealers may show that Monitronics and UTC responded differently to other dealers accused of violating the TCPA than they did to VMS. Such evidence would be relevant for demonstrating whether Monitronics and UTC took "effective steps within its power to force [VMS] to cease [its] conduct." See In re Joint Petition, 28 F.C.C. Rcd. at 6592 (alterations in original).

## V. Conclusion

In sum, the undersigned finds that the information Mey has requested regarding Monitronics' and UTC's other authorized dealers is relevant to Mey's claims that the Defendants, or their agents, violated the TCPA provisions prohibiting telephone solicitations to those whose telephone numbers are listed on the Registry. This finding is in accord with rulings in other lawsuits alleging substantially similar violations of the TCPA. See, e.g., Donaca v. DISH Network, L.L.C., No. 11-cv-02910-RBJ, 2012 WL 3590765, at *1 (D. Colo. Aug. 20, 2012) (granting plaintiff's oral motion to compel discovery, overruling DISH's objection limiting discovery to certain dealers, and ordering that DISH "produce requested information and documents within its possession or subject to its

control that relate to any entity that engages in outbound telemarketing of DISH goods or services"); United States v. DISH Network, L.L.C., No. 09-3073, 2012 WL 5463101, at *3-4 (C.D. Ill. Dec. 29, 2010) (disagreeing with DISH that discovery should be limited to the five dealers named in the complaint and finding that information regarding all authorized dealers was relevant because the complaint referenced DISH, five of its dealers, and those dealers' intermediaries).

## VI. Decision and Order

For the foregoing reasons, Mey's Motion to Compel (Docket No. 205) is **GRANTED**. Defendants Monitronics and UTC shall serve adequate and complete responses within thirty (30) calendar days following entry of this Order/Opinion.

In accord with Fed. R. Civ. P. 37(a)(5)(A), Mey shall submit and serve on counsel of record for both Monitronics and UTC its claim for "reasonable expenses," if any, including attorneys' fees, necessitated by the conduct of the party and/or party's attorney which necessitated the filing and prosecution of the subject motion to compel within fourteen (14) days following entry of this Order/Opinion. Monitronics and UTC shall have fourteen (14) days following the filing of Mey's claim to file any written objections they may have to the reasonableness of the claimed expenses. Only in the event Mey files a claim for expenses and Monitronics and UTC timely object, will the Court schedule "an opportunity to be heard" hearing on the reasonableness of the fees and costs claimed.

It is so **ORDERED**.

The Clerk is directed to remove Docket No. 205 from the docket of motions actively pending before the Court.

The Clerk is further directed to provide copies of this Order/Opinion to all counsel of record.

DATED: January 28, 2014

/s/ John S. Kaull
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE