IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: MONITRONICS
INTERNATIONAL, INC.,
TELEPHONE CONSUMER
PROTECTION ACT LITIGATION

                                    MDL NO. 1:13MD2493

------------------------

THIS DOCUMENT RELATES TO 1:14CV169


**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

On February 23, 2015, defendant 2GIG Technologies, Inc.
("2GIG") filed a motion to dismiss the second amended complaint
filed by pro se plaintiff Craig Cunningham ("Cunningham") (Dkt. No.
138).[1]  On March 19, 2015, Cunningham, by liaison counsel, filed a
response, opposing 2GIG's motion (Dkt. No. 153).  On April 2, 2015,
2GIG filed a reply (Dkt. No. 169).  For the reasons that follow,
the Court **DENIES** 2GIG's motion to dismiss Cunningham's second
amended complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 18, 2014, Cunningham filed a complaint against
Alliance Security and ten John Doe defendants in the United States
District Court for the Middle District of Tennessee, alleging
violations of the Telephone Consumer Protection Act ("TCPA"), 47

---

[1] Unless otherwise noted, the docket numbers refer to those in
1:14CV169, Cunningham v. Alliance Security.

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

U.S.C. § 227, and its implementing regulations (Dkt. No. 1).   On July 14, 2014, Cunningham amended his complaint (Dkt. No. 40).

On October 9, 2014, the Judicial Panel on Multidistrict Litigation directed that Cunningham's case be transferred to the multidistrict litigation ("MDL") currently pending in this district (Dkt. Nos. 52, 53).   Chief United States District Judge Kevin Sharp entered an order transferring the case on October 9, 2014 (Dkt. No. 54).

On November 24, 2014, Cunningham sought leave to amend his complaint for the second time to assert additional claims and name additional defendants (Dkt. No. 80).   On January 7, 2015, the Court granted Cunningham's motion, and the Clerk filed Cunningham's second amended complaint, naming 2GIG as a defendant, that same day (Dkt. No. 97).[2]   Cunningham served 2GIG on February 2, 2015 (Dkt. No. 129).

In his second amended complaint, Cunningham alleges that 2GIG, an alarm system manufacturer, engaged in a scheme with alarm system

---

[2] In addition to 2GIG, Cunningham's second amended complaint names as defendants Jasjit Gotra, the CEO of Alliance Security, Monitronics International Inc., an alarm monitoring company, UTC Fire and America's Corporation, an alarm manufacturer, Secure 1 Systems, an alarm system dealer, and Mike Mavarro, the President of Secure 1 Systems (Dkt. No. 97 at 1-2).

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

dealers like defendants Alliance Security and Secure 1 Inc., and
alarm monitoring companies like defendant Monitronics, in violation
of the TCPA (Dkt. No. 97 at 1-2, 4-6).  According to Cunningham,
alarm system dealers make unsolicited telephone calls to consumers
attempting to sell the alarm systems, in violation of the TCPA, "on
behalf of and with [the] full knowledge of" the alarm system
manufacturers and monitoring companies.  Id. at 5.

Cunningham alleges that, between 2012 and 2014, he received
"multiple automated calls with a pre-recorded message" on both his
home and cellular telephones informing him that home break-ins are
on the rise, and offering him a free security system.  Id. at 3.
He later discovered that defendants Alliance Security and Secure 1
Systems, both alarm system dealers, were making the calls.  Id.
Cunningham, who did not consent to the offending calls, alleges
that they violated the TCPA in two ways: (1) the pre-recorded
messages played during the calls "failed to have the mandated
identification information and the do-not-call list subsection . .
." required by 47 U.S.C. § 227(c); and, (2) the automated nature of
the pre-recorded calls violated 47 U.S.C. § 227(b).  Id. at 3, 8.

Importantly, Cunningham alleges that 2GIG "was a knowing
accessory" to the dealers' calls, and offered as proof 2GIG's

3

IN RE MONITRONICS                                        1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

"frequently asked questions" page on its website, which is "devoted
to telemarketing telephone calls, how [2GIG doesn't] sell directly
to consumers . . . and responses to consumers who have received
calls about their products." Id. at 5.  He alleges that the
offending calls "were placed with apparent authority, actual
authority, and the ratification" of 2GIG, who knew of the dealers'
improper conduct but "refused to exercise control or authority over
Alliance Security to reduce or eliminate the improper sales
methods." Id.

Allegedly, the "calls were placed on behalf of and with full
knowledge of" 2GIG, who permitted the dealers to use its trade
names and trademarks, and gave them access to its consumer services
database and pricing information. Id. at 5-6.  Cunningham contends
that "formal, contractual agreements" exist between the parties
"for sale and distributions [sic] of their products and services
through the alarm dealers . . . ." Id. at 6.  He notes that the
agents of Alliance Security and Secure 1 Systems who called him
mentioned 2GIG, as well as the other defendants, by name. Id.
Cunningham specifically alleges an "authorized dealer" relationship
between the dealers and the manufacturers, stating that
manufacturers like 2GIG don't sell directly to the public, "but
rather sign[] contracts for distribution" with their authorized

IN RE MONITRONICS                              1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

dealers.  Id.  "The agreements between the dealers and manufactures
[sic] and Monitronics are dictated by the terms from the
manufacturers and Monitronics."  Id.  Cunningham points to 2GIG's
website, which states that it only sells its product to "authorized
distribution channels," as proof of an authorized dealer
relationship.  Id. at 7.

Cunningham believes that the defendants engaged in a scheme to
violate the TCPA by using lead generators to crawl the internet and
compile a list of targets for their calls.  Id. at 6.  He
specifically alleges that the dealers' calls were placed "on behalf
of, and for the benefit of" 2GIG, who "authorizes dealers to place
calls under their individual apparent and actual authority . . . ."
Id.  Furthermore, he alleges that 2GIG ratified the acts of the
dealers.  Id.

## LEGAL BACKGROUND

In the last several years, plaintiffs across the country have
filed numerous claims against home alarm manufacturers, dealers,
and monitoring companies, purportedly involved in an automated
telemarketing scheme.  Allegedly, the dealers market the alarm
systems and monitoring services by making calls, either through use
of an automated telephone dialing system or through use of an
artificial or prerecorded voice, to prospective retail customers on

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

  MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

behalf of the more reputable manufacturers and monitoring
companies. Through this arrangement, the dealers receive cash and
discounts on products from the manufacturers, the manufacturers
increase their sales, and the monitoring companies obtain lucrative
service contracts.

A.    The TCPA

     According to the claims, the dealers' telemarketing efforts
violate portions of the TCPA. The TCPA was enacted in response to
"[v]oluminous consumer complaints about abuses of telephone
technology." Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740,
744 (2012). In Mims, the Supreme Court summarized Congress'
findings on the matter:

>     In enacting the TCPA, Congress made several findings . .
>     . "Unrestricted telemarketing," Congress determined, "can
>     be an intrusive invasion of privacy." TCPA, 105 Stat.
>     2394, note following 47 U.S.C. § 227 (Congressional
>     Findings) (internal quotation marks omitted).In
>     particular, Congress reported, "[m]any consumers are
>     outraged over the proliferation of intrusive, nuisance
>     [telemarketing] calls to their homes." Ibid. (internal
>     quotation marks omitted).

The TCPA is a remedial statute and thus entitled to a broad
construction. See, e.g., Holmes v. Back Doctors, Ltd., 695
F.Supp.2d 843, 854 (S.D.Ill. 2010) ("It is true that . . . the TCPA
is a remedial statute."). As such, it "should be liberally
construed and should be interpreted (when that is possible) in a

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

manner tending to discourage attempted evasions by wrongdoers."
Scarborough v. Atlantic Coast Line R. Co., 178 F.2d 253, 258 (4th
Cir. 1950).  At the same time, a remedial purpose "will not justify
reading a provision 'more broadly than its language and the
statutory scheme reasonably permit.'"  Touche Ross & Co. v.
Redington, 442 U.S. 560, 578 (1979) (quoting SEC v. Sloan, 436 U.S.
103, 116 (1978)).  The TCPA provides in pertinent part as follows:

(1) Prohibitions

It shall be unlawful for any person within the United
States . . .

(A) to make any call . . . using any automatic telephone
dialing system or an artificial or prerecorded voice --

. . .

(iii) to any telephone number assigned to a paging
service, cellular telephone service, specialized mobile
radio service, or other radio common carrier service, or
any service for which the called party is charged for the
call; [or]

. . .

(B) to initiate any telephone call to any residential
telephone line using an artificial or prerecorded voice
to deliver a message without the prior express consent of
the called party . . . .

. . .

(3) Private right of action

```
IN RE MONITRONICS                              1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169
```

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

> A person or entity may, if otherwise permitted by the
> laws or rules of court of a State, bring in an
> appropriate court of that State --
>
> (A) an action based on a violation of this subsection or
> the regulations prescribed under this subsection to
> enjoin such violation,
>
> (B) an action to recover for actual monetary loss from
> such a violation, or to receive $500 in damages for each
> such violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or
> knowingly violated this subsection or the regulations
> prescribed under this subsection, the court may, in its
> discretion, increase the amount of the award to an amount
> equal to not more than 3 times the amount available under
> subparagraph (B) of this paragraph.

47 U.S.C. § 227(b).

The TCPA also authorizes the Federal Communications Commission

("F.C.C.") to establish a "single national database to compile a

list of telephone numbers of residential subscribers who object to

receiving telephone solicitations."  Accordingly, the F.C.C.

established a "do-not-call registry," maintained by the Federal

Trade Commission, and has promulgated the following regulation:

> (c) No person or entity shall initiate any telephone
> solicitation to:
>
> . . .
>
> (2) A residential telephone subscriber who has registered
> his or her telephone number on the national do-not-call
> registry of persons who do not wish to receive telephone

8

```
IN RE MONITRONICS                              1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169
```

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

> solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

47 C.F.R. § 64.1200.

The TCPA provides a cause of action to "[a] person who has received more than one telephone call within any 12-month period by or **on behalf of** the same entity in violation of the regulations" noted above. § 227(c)(5) (emphasis added). The complainant may sue for an injunction, the greater of the actual monetary loss or $500 for each violation, or both an injunction and damages. <u>Id.</u>

**B.   Early Cases**

Neither the TCPA nor its associated regulations define the term "on behalf of," but courts that have considered the issue have applied principles of agency to determine when entities are liable for calls made by third parties. Some of these courts have relied upon the laws of the states in which they sit, while others have applied a more general agency analysis, resulting in a variety of approaches to determining the reach of "on behalf of" liability. <u>See</u>, <u>e.g.</u>, <u>United States v. Dish Network, LLC</u>, 667 F. Supp. 2d 952, 963 (C.D. Ill. 2009) (holding that strict agency relationship is not required if entity plausibly could have benefitted from calls made by third party); <u>Charvat v. Echostar Satellite</u>, 676 F.

IN RE MONITRONICS                                              1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

   **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

Supp. 2d 668, 675 (S.D. Ohio 2009) (applying Ohio law to determine

whether entities had sufficient control over third parties who made

calls); Applestein v. Fairfield Resorts, No. 0004, 2009 WL 5604429

(Md. Ct. App. July 8, 2009) (examining the "totality of

circumstances" surrounding the parties' relationship).

   The United States Court of Appeals for the Sixth Circuit

recognized this lack of uniformity in Charvat v. EchoStar

Satellite, LLC, 630 F.3d 459, 466 (6th Cir. 2010). There, the

plaintiff, Phillip Charvat ("Charvat"), sued an entity, EchoStar

Satellite, LLC ("EchoStar"), that did not place illegal calls to

him, but whose independent contractors did. The Sixth Circuit

concluded that EchoStar's liability turned on the meaning of "on

behalf of" in § 227(c)(5), but that the phrase was ambiguous:

> Does § 227(c)(5) create liability for entities on whose
> behalf calls are made even when the calls are placed by
> independent contractors rather than by agents or
> employees? And does § 225(c)(5) create liability for
> entities on whose behalf calls are made even though the
> section is labeled only as a private right of action and
> even though individuals still must sue for violations of
> regulations? The regulations contain a similar ambiguity.
> Just one of the relevant regulations explicitly creates
> liability for entities on whose behalf calls are made, 47
> C.F.R. § 64.1200(d)(3), while the others concern entities
> who make or initiate calls, see, e.g., id.
> § 64.1200(d)(1), (d)(6).

Id. at 465. The court observed that, as a result of this

ambiguity, courts had announced a variety of different measures for

10

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

determining whether a third party acts on behalf of an entity, and
that this lack of uniformity "heighten[ed] the risk that
individuals and companies will be subject to decisions pointing in
different directions." Id. at 466.

        Concluding that "[t]he answers to these questions implicate
the F.C.C.'s statutory authority to interpret the Act, to say
nothing of its own regulations," the Sixth Circuit invited the
F.C.C. to file an amicus brief offering its views on the case.  In
its brief, the F.C.C. "made clear that a person can be liable for
calls made on its behalf even if the entity does not directly place
those calls," and that, "[i]n those circumstances, the person or
entity is properly held to have 'initiated' the call within the
meaning of the statute and the Commission's regulations."  Brief
for the F.C.C. and the United States as Amici Curiae, No. 09-4525,
2010 WL 7325986, at *9-10 (Oct. 15, 2010).  The F.C.C. also
asserted that "although § 227(c)(5) may incorporate agency
principles, there are compelling reasons to conclude that it does
not incorporate principles of state agency law." Id. (emphasis in
original).  Before it could offer further interpretation, however,
the F.C.C. averred that a referral under the primary jurisdiction
doctrine would be necessary.

IN RE MONITRONICS                              1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

   **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

     The Sixth Circuit agreed that a referral to the F.C.C. under
the doctrine of primary jurisdiction was proper because it would
advance regulatory uniformity and answer a question within the
agency's discretion and technical expertise.  Charvat, 630 F.3d at
466, 467 (citing In re StarNet, Inc., 355 F.3d 634, 639 (7th Cir.
2004) ("Only the F.C.C. can disambiguate the word[s] [on behalf
of]; all we could do would be to make an educated guess."))
Accordingly, the Sixth Circuit referred the case to the F.C.C.,
which, on April 4, 2011, issued a public notice seeking comment on
the matter.  Public Notice, CG Docket No. 11-50, 26 F.C.C.R. 5040
(Apr. 4, 2011).

**C.   The F.C.C.'s Declaratory Ruling**

     On May 9, 2013, the F.C.C. issued its Declaratory Ruling as to
the scope of "on behalf of" liability under the TCPA. The F.C.C.
stated that "while a seller does not generally 'initiate' calls
made through a third-party telemarketer within the meaning of the
TCPA, it nonetheless may be held vicariously liable under federal
common law principles of agency for violations of either section
227(b) or section 227(c) that are committed by third-party
telemarketers."  F.C.C. Declaratory Ruling, ¶ 1.  The F.C.C.,
however, made plain that "on behalf of" liability does not require
a formal agency relationship.  Id. at ¶ 28.  Instead, a plaintiff

IN RE MONITRONICS                                  1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

  **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

proceeding under 47 U.S.C. § 227(c) could also use principles of
ratification and apparent authority to establish the seller's
vicarious liability for the illegal acts of a third-party
telemarketer. Id. Armed with the F.C.C.'s guidance, the Court turns
to the pending motion.

### STANDARD OF REVIEW

     In reviewing the sufficiency of a complaint, a district court
"'must accept as true all of the factual allegations contained in
the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188
(4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94
(2007)). While a complaint need not contain detailed factual
allegations, a plaintiff is obligated to provide the grounds of his
entitlement to relief with more than mere labels and conclusions;
a formulaic recitation of the elements of a cause of action will
not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
Indeed, courts "are not bound to accept as true a legal conclusion
couched as a factual allegation." Papasan, 478 U.S. at 286 (1986).

     In considering whether the facts alleged are sufficient, a
court must consider whether "a complaint . . . contain[s] 'enough
facts to state a claim to relief that is plausible on its face.'"
Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547). "A
claim has facial plausibility when the plaintiff pleads factual

IN RE MONITRONICS                                      1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  This requires "more than a sheer

possibility that a defendant has acted unlawfully." Id.

### ANALYSIS

     On February 23, 2015, 2GIG filed a motion to dismiss

Cunningham's second amended complaint for failure to state a claim

upon which relief can be granted under Fed. R. Civ. P. 12(b)(6)

(Dkt. No. 138).  2GIG argues that Cunningham failed to allege a

prima facie case under the TCPA because 2GIG is not a "seller,"

and, even if it were, Cunningham cannot plead sufficient facts to

support a claim of vicarious liability (Dkt. No. 139 at 1-2).

     On March 19, 2015, Cunningham, by liaison counsel Jonathan R.

Marshall, filed a response opposing 2GIG's motion and contending

that this Court's decision in Mey v. Monitronics Int'l, Inc., 959

F.Supp.2d 927 (N.D.W. Va. 2013), is controlling.  There, this Court

explained that determining if an entity is a "seller" under the

TCPA depends on whether a telephone solicitation is made on that

entity's behalf.  It held that, at the summary judgment stage, the

fact that a third-party telemarketer is permitted to hold itself

out as an "authorized dealer" could lead a reasonable jury to

conclude that the seller is vicariously liable. Id. at 932.

14

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

On April 2, 2015, 2GIG filed a reply, reiterating its argument
that it is not a "seller" for purposes of TCPA liability because it
sold alarm systems to third-parties, who then resold the systems on
their own account, rather than "on behalf of" 2GIG (Dkt. No. 169 at
2-4).  It further argues that, unlike Mey, the parties here did not
have an "authorized dealer" relationship, and 2GIG cannot be held
liable under the principle of apparent authority because it did not
represent that Alliance Security was acting on its behalf.  Id. at
5-6.

A.    2GIG's Status as a "Seller"

The Court must first address whether 2GIG is a "seller," as
that term is defined by the TCPA.  The F.C.C.'s regulations define
a "seller" as "the person or entity on whose behalf a telephone
call or message is initiated for the purpose of encouraging the
purchase or rental of, or investment in, property, goods, or
services, which is transmitted to any person."   47 C.F.R.
64.1200(f)(9).  In Mey, this Court addressed the same argument 2GIG
raises here–that a "manufacturer" is not a "seller" under the TCPA,
and is therefore immune from liability–and rejected it, noting that
"the argument cannot withstand a plain reading of the F.C.C.'s
rules."  959 F.Supp.2d at 933.  The issue, then, is whether
Cunningham has pleaded sufficient facts that the dealers'

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
 COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

telemarketing calls were made "on behalf of" 2GIG to characterize
it as a "seller" within the meaning of the TCPA.

     2GIG contends that any telemarketing calls made by its co-
defendants were not made on its behalf, but, rather, to benefit
themselves (Dkt. No. 169 at 3-4).  As a result, it argues, the
F.C.C. Declaratory Ruling distinguishing between a "telemarketer"
and a "seller" squarely apply.  Id. at 4.

     In its Declaratory Ruling, the F.C.C. noted that situations
where a manufacturer produces and sells a product to dealers, who
turn around and re-sell the product to consumers, would not result
in liability for the manufacturer because the middleman dealer
sells the product on its own account.  F.C.C. Declaratory Ruling,
¶ 45.  The F.C.C. also stated, however, that it saw no reason "that
a seller should not be liable under [either section 227(c) or
227(b)] for calls made by a third-party telemarketer when it has
authorized that telemarketer to market its goods or services."
F.C.C. Declaratory Ruling, ¶ 47.

     In his second amended complaint, Cunningham alleges that the
dealers placed telemarketing calls "on behalf of and with full
knowledge" of 2GIG, which "permitted" the dealers to use its trade
names and trademark, and gave the dealers access to its customer
service database (Dkt. No. 97 at 5).  He further alleges that 2GIG

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

"authorizes dealers to place calls" on its behalf, and signed a
contract with the dealers for distribution. Id. at 6. At the
motion to dismiss stage, the Court is required to view these well-
pleaded facts as true. Anderson, 508 F.3d at 188.

    2GIG strenuously argues that the dealers were not "authorized
dealers," and urges the Court to consider its website, which states
that its "sales/tracking cycle stops" with its distributors (Dkt.
No. 169 at 4-5). Even if the website were integral to Cunningham's
complaint, the Court is still obligated to accept the allegations
in the second amended complaint as true. Anderson, 508 F.3d at
188. Once the Court does so, it is clear that Cunningham has
alleged sufficient facts to support his theory that the dealers,
manufacturers, and alarm monitoring companies engage in a mutually
profitable telemarketing scheme, notwithstanding 2GIG's
representations to the contrary on its website (Dkt. No. 97).

    In Mey, the Court found it important that "both entities have
agreements . . . that enable [the dealer engaging in telemarketing]
to hold itself out as an 'authorized dealer'" of the alarm
monitoring company and the manufacturer. 959 F.Supp.2d at 932.
That case, however, had progressed to the summary judgment stage,
and the parties had the benefit of fulsome discovery before

17

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

presenting evidence of their authorized dealer relationship to the
Court.

     In this case, at the motion to dismiss stage, Cunningham's
second amended complaint plausibly alleges that Alliance Security
and Secure 1 were acting "on behalf of" 2GIG, therefore making it
a "seller" within the F.C.C.'s definition.  See Anderson, 508 F.3d
at 188; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

B.   Vicarious Liability

     2GIG next argues that, even if the Court does find it to be a
"seller" under the TCPA, Cunningham has failed to plead sufficient
facts to show vicarious liability (Dkt. No. 139 at 7).  "Although
Plaintiff is on the third version of his complaint, Plaintiff fails
to plead the elements of agency or ratification sufficient to
support the many conclusions of law contained in his amended
complaint."  Id.  Specifically, 2GIG emphasizes that the dealers
never had apparent authority to market on its behalf because 2GIG
never manifested any intent for the dealers to do so (Dkt. No. 169
at 5-6).

     In response, Cunningham contends that he plausibly alleged
vicarious liability under the TCPA when he pleaded facts showing
that an "authorized distributor" relationship existed between 2GIG

18

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]

and the dealers (Dkt. No. 153 at 5).   Cunningham argues that the
Court's decision in Mey is controlling here.

        In Mey, the Court emphasized that, under the F.C.C.'s
Declaratory Ruling, "on behalf of" liability "does not require a
formal agency relationship," and could exist based on "principles
of ratification and apparent authority."   959 F.Supp.2d at 932.
The Court defined apparent authority as holding "a principal
accountable for the results of third-party beliefs about an actor's
authority to act as an agent when the belief is reasonable and
traceable to a manifestation of the principal."   Id. at fn. 1
(quoting F.C.C. Declaratory Ruling, ¶ 34).   It held that, when a
seller enters into an agreement with a telemarketer that enables
the telemarketer to hold itself out as an authorized dealer, that
fact alone is sufficient to state a claim based on the principle of
apparent authority.[3]   Id. at 932.

        Cunningham has pleaded that an authorized dealer relationship
exists between 2GIG and the dealers (Dkt. No. 97 at 6).   His second
amended complaint contains the following facts to support that
allegation:   (1) that the dealers placed telemarketing calls "on
behalf of and with full knowledge" of 2GIG; (2) that 2GIG

_____

        [3] To the extent 2GIG urges a reassessment of the decision in
Mey, the Court declines to do so.   See Dkt. No. 169 at 5-6.

                                    19

IN RE MONITRONICS                                    1:13MD2493
THIS DOCUMENT RELATES TO: 1:14CV169

 **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED
COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

"permitted" the dealers to use its trade names and trademark, and
gave the dealers access to its customer service database; (3) that
2GIG "authorizes dealers to place calls" on its behalf, and
contracted with the dealers for distribution; (4) that the dealers
mentioned 2GIG by name during their calls; and, (5) that 2GIG has
"known for years" that the dealers have been the subject of
complaints from consumers and government agencies (Dkt. No. 97 at
5-6).

     Despite 2GIG's argument to the contrary, Cunningham's factual
allegations that 2GIG authorized dealers to (1) place calls on its
behalf, (2) use its trademark and trade name, and (3) access its
customer database, are sufficient to plausibly allege an apparent
agency relationship, particularly if the Court considers 2GIG's
online statements that it only distributes through authorized
channels.  Id. at 5-7.  See Restatement (Third) of Agency § 2.03,
cmt. c.

     For the reasons discussed, the Court finds that Cunningham has
plausibly alleged sufficient facts that an authorized dealer
relationship existed between 2GIG and the dealers, and that 2GIG is
vicariously liable for the telemarketing calls made by the dealers.
The Court therefore **DENIES** 2Gig's motion to dismiss (Dkt. No. 138).

     It is so **ORDERED**.

**IN RE MONITRONICS**                                              **1:13MD2493**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT [DKT. NO. 138 IN 1:14CV169, DKT. NO. 339 IN 1:13MD2493]**

The Court directs the Clerk to transmit copies of this Order to counsel of record and to the <u>pro</u> <u>se</u> plaintiff by certified mail, return receipt requested.

DATED:  April 30, 2015.


                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE