UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: MONITRONICS INTERNATIONAL, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 1:13-md-02493-JPB-JES |
| THIS DOCUMENT RELATES TO:<br><br>    ALL CASES | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND ...................................................................... 2

III.    THE PROPOSED SETTLEMENT ..................................................................... 4

    A.    The Settlement Class ............................................................................... 4

    B.    Settlement Relief ..................................................................................... 5

        1.    Settlement Class Member Payments ........................................... 5

        2.    Plaintiffs' Service Awards ........................................................... 6

        3.    Attorneys' Fees and Litigation Expenses .................................... 6

    C.    Release ...................................................................................................... 6

    D.    Notice Program ........................................................................................ 7

IV.     THE SETTLEMENT MERITS FINAL APPROVAL ........................................ 7

    A.    The Settlement Is Fair, Reasonable And Adequate ................................. 7

        1.    The Advanced Posture of the Case And The Extensive Discovery
Conducted By The Time Of Settlement Support Approval ...................... 9

        2.    The Negotiation Process Was At All Times Arms' Length And Was
Overseen By An Experienced Mediator ................................................. 10

        3.    Class Counsel Are Experienced TCPA Litigators .................................... 11

        4.    The Relative Strength Of The Plaintiffs' Case On The Merits And
The Existence Of Any Difficulties Of Proof Or Strong Defenses The
Plaintiffs Are Likely To Encounter If The Case Goes To Trial ............... 11

        5.    The Anticipated Duration And Expense Of Additional Litigation .......... 12

        6.    The Solvency Of The Defendants And Likelihood Of Recovery On A
Litigated Judgment ................................................................................. 13

        7.    Other Factors: The Settlement Amount Is Reasonable In Light Of The
Value Of All The Claims Asserted And The Substantial Risks Of
Further Litigation .................................................................................... 13

    B.    The Settlement Class Should Be Certified ............................................ 15

    C.    All Objections Should Be Denied .......................................................... 15

V.      CONCLUSION .................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. AllianceOne Receivables Mgmt.*,
   No. 08-cv-248 (S.D. Cal. Sept. 28, 2012)..............................................................14

*Bicking v. Mitchell Rubenstein & Assocs.*,
   No. 11-78, 2011 WL 5325674 (E.D. Va. Nov. 3, 2011)............................................8

*Cain v. Monitronics Int'l, Inc.*,
   Case No. 3:13-cv-1549-L-DHB (S.D. Cal.) ............................................................3

*In re Capital One TCPA Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................13

*In re Compact Disc Litig.*,
   216 F.R.D. 197 (D. Me. 2003) .........................................................................11, 12

*Deem v. Ames True Temper, Inc.*,
   C.A. No. 6:10–cv–01339, 2013 WL 2285972 (S.D. W. Va. May 23, 2013) .........................11

*Dijkstra v. Carenbauer*,
   C.A. No. 5:11–CV–00152, 2016 WL 6804980 (N.D. W. Va. July 12, 2016)................ *passim*

*Girsh v. Jepson*,
   521 F.3d 153 (3d Cir. 1975).................................................................................12

*Groves v. Roy G. Hildreth and Son, Inc.*,
   2011 WL 4382708 (S.D. W. Va. Sept. 20, 2011) ...............................................8, 9

*Hodgin v. Monitronics Int'l, Inc.*,
   2:13-00321-JLR (W.D. Wash.)..............................................................................3

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   855 F. Supp. 825 (E.D. N.C. 1992)........................................................................8

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ....................................................................7, 8, 9, 14

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)...........................................................................14

*Loudermilk Services, Inc. v. Marathon Petroleum Co. LLC*,
   C.A. No. 3:04-0966, 2009 WL 728518 (S.D. W. Va. Mar. 18, 2009)......................9

*Manouchehri v. Styles for Less, Inc.*,
   Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016)...............................14

*Markos v. Wells Fargo Bank, N.A.*,
   2017 WL 416425 (N.D. Ga. Jan. 30, 2017)............................................................................14

*Mey v. Monitronics Int'l, Inc.*,
   5:11-00090 (N.D. W. Va.) ....................................................................................................2, 3

*Muhammad v. Nat'l City Mortgage, Inc.*
   C.A. No. 2:07-0423, 2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008)..................................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..................................................................................................................7

*O'Shea v. Monitronics Int'l, Inc.*,
   Case No. 8:13-cv-1054 JVA (C.D. Cal.) ..................................................................................3

*Rolland v. Cellucci*,
   191 F.R.D. 3 (D. Mass. 2000)..................................................................................................12

*Rose v. Bank of Am. Corp.*,
   2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ........................................................................14

*Scardelletti v. Debarr*,
   43 Fed. Appx. 525 (4th Cir. 2002)....................................................................................7, 8, 9

*Seaman v. Duke Univ.*,
   No. 1:15-cv-462, 2018 WL 718961 (M.D. N.C. Jan. 4, 2018)................................................15

*Smith v. Res-Care, Inc.*,
   No. CV 3:13-5211, 2015 WL 461529 (S.D. W. Va. Feb. 3, 2015) ..........................................9

*Smith v. Res-Care, Inc.*,
   No. CV 3:13-5211, 2015 WL 6479658 (S.D. W. Va. Oct. 27, 2015) ......................................8

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118, 2014 WL 1309352 (N.D. Cal. Mar. 10, 2014)............................................14

*Teresa M. Speaks v. U.S. Tobacco Coop., Inc.*,
   No. 5:12-cv-729-D, 2018 WL 988080 (E.D. N.C. Feb. 20, 2018) ..........................................14

## Statutes

47 U.S.C. § 227(c)(5)................................................................................................................2, 3

## Rules

Fed. R. Civ. P. 23...............................................................................................................1, 7, 15

Fed. R. Civ. P. 23(c)(2).................................................................................................7

Fed. R. Civ. P. 23(e) .................................................................................................7, 8

Fed. R. Civ. P. 23(e)(1)(C) .........................................................................................8

**Other Authorities**

*Manual for Complex Litigation* § 21.632 (4th ed. 2004).............................................8

# I.      INTRODUCTION

Plaintiffs and Monitronics have negotiated and the Court has preliminarily approved a settlement that will resolve this Telephone Consumer Protection Act litigation. The proposed settlement requires Monitronics to establish a $28 million fund which will be used to pay Settlement Class Members who have submitted claims, to pay settlement administration costs, and to pay Plaintiffs' proposed service awards, attorneys' fees, and litigation costs.

The Settlement Agreement is now subject to final approval. The parties have fulfilled all their obligations under the preliminary approval order, and notice has been completed. As of the claims deadline, 344,508 claims were submitted.[1] Plaintiffs estimate that if the Court approves the attorneys' fees and costs, and Plaintiffs' service awards as requested,[2] each claimant will receive a payment of approximately $38, an amount that compares favorably with other TCPA settlements approved by courts across the country. Also significant is the limited scope of the release: under the Settlement, class members retain their rights to pursue the entities that actually placed the telemarketing calls, including Monitronics' authorized dealers and their subcontractors. Only claims against Monitronics, which did not place the calls, will be released. The Settlement is, in all respects, fair, adequate, and reasonable.

Accordingly, Plaintiffs request that the Court grant final approval of the Settlement Agreement; find the Settlement Agreement to be fair, reasonable, and adequate to the Settlement Class; find that the class notice program satisfies due process and Rule 23; dismiss the Plaintiffs' claims against Monitronics with prejudice; retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement

---

[1] Declaration of Carla Peak on Implementation of Notice Plan ("Peak Decl.") ¶ 30, Exhibit B to Plaintiffs' Motion.
[2] Plaintiffs filed a separate application for an award of attorneys' fees and costs, and for Plaintiffs' service awards on January 19, 2018. Dkt. No. 1140.

Agreement; and grant Plaintiffs' application for attorneys' fees and costs, and service awards for the named Plaintiffs.

## II.    PROCEDURAL BACKGROUND

This litigation has been pending now for over six years. Previous submissions describe the action's procedural history in detail. *See* Plaintiffs' Memorandum in Support of Preliminary Approval, Dkt. No. 1109; Declaration of Jonathan Marshall in Support of Preliminary Approval, Dkt. No. 1108-1, ¶¶ 8-14. It is summarized briefly here.

On May 18, 2011, Diana Mey filed a class action in this Court against three defendants: Monitronics, UTC Fire & Security, Inc. ("UTC"), and Versatile Marketing Solutions, Inc. ("VMS").[3] Her complaint alleged that Defendant VMS violated the TCPA by calling her home phone repeatedly even though her phone number had been continuously on the national Do Not Call Registry since 2003, and that Monitronics and UTC were vicariously liable for VMS's calls because they were placed to sell her a home security system manufactured by UTC and monitored by Monitronics. *Mey v. Monitronics Int'l, Inc.*, 5:11-00090 (N.D. W. Va.) ("*Mey Action*").

The parties to the *Mey* Action engaged in discovery, and both Monitronics and UTC filed motions for summary judgment on the issue of whether the phrase "on behalf of," contained in 47 U.S.C. § 227(c)(5), exposed them to TCPA liability. Dkt. No. 1108-1, ¶ 9. The Court denied the motions, rejecting the argument that UTC and Monitronics could not be liable for any calls they did not physically place. *Id.*

Ms. Mey also moved for summary judgment against VMS on the issue of whether she consented to receive telemarketing calls. The Court granted Ms. Mey's motion, holding that

---

[3] Alliance Security, Inc., is the successor of VMS.

VMS/Alliance had not obtained the prior, express, written consent necessary to call Ms. Mey's number. *Id.*

On February 19, 2013, Janet and Michael Hodgin filed a class action against Monitronics and Ascent Capital in the Western District of Washington. *Hodgin v. Monitronics Int'l, Inc.*, 2:13-00321-JLR (W.D. Wash.) ("*Hodgin* Action"). The Hodgins alleged that Monitronics violated the TCPA by placing prerecorded message calls to their home phone. Before the lawsuit was transferred to the MDL, the parties exchanged written discovery responses and stipulated to the dismissal of defendant Ascent Capital.

On July 2, 2013, George Cain filed a class action lawsuit in the Southern District of California alleging that Monitronics, or a third party acting on Monitronics' behalf, unlawfully placed robocalls to residential and cellular telephone numbers. *Cain v. Monitronics Int'l, Inc.*, Case No. 3:13-cv-1549-L-DHB (S.D. Cal.) ("*Cain* Action").

Kerry O'Shea filed a class action lawsuit in the Central District of California two weeks later, alleging that Monitronics, or a third party acting on Monitronics' behalf, unlawfully placed robocalls to residential and cellular telephone numbers. *O'Shea v. Monitronics Int'l, Inc.*, Case No. 8:13-cv-1054 JVA (JPRx) (C.D. Cal.) ("*O'Shea* Action").

On December 16, 2013, the Judicial Panel on Multidistrict Litigation granted Monitronics' motion to transfer the *Hodgin, Cain,* and *O'Shea* Actions and centralize them, along with the *Mey* Action, in this district, thus creating this multidistrict litigation. Since that time, more than thirty actions have been transferred to this Court for inclusion in the MDL, including actions brought by Scott Dolemba, Jason Bennett and Philip Charvat.

In or around June 2016, Monitronics sent offers of judgment to twenty plaintiffs whose cases had been consolidated in the MDL. Dkt. No. 1108-1, ¶ 19. While many of those plaintiffs

accepted the offers of judgment, Ms. Mey, Mr. Charvat, Mr. Bennett, Mr. Dolemba, and Janet and Michael Hodgin rejected Monitronics' offers so they could pursue claims on behalf of the proposed classes. *Id.* ¶ 20.

On December 8 and 9, 2016, the parties engaged in mediation with Bruce Friedman of JAMS, but the case did not resolve at the mediation. *Id.* ¶ 11.  Soon after the December mediation, this Court issued an order granting Defendants UTC and Honeywell's motion for summary judgment (Dkt. No. 642), which was subsequently affirmed by the Fourth Circuit (Appeal No. 17-1222, Dkt. No. 66). On June 2, 2017, the parties participated in a third day of mediation with Mr. Friedman. Eventually Monitronics agreed to pay $28 million to settle the claims, which Plaintiffs had demanded as part of an insurance policy limits demand. *Id.* ¶ 14. This led ultimately to the Settlement Agreement currently before the Court.

On September 28, 2017, the Court granted Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement, and provisionally certified the Settlement Class defined in Section III(A), below. Dkt. No. 1122.

### III.    THE PROPOSED SETTLEMENT

The full text of the parties' Class Action Settlement Agreement has been filed with the Court at Dkt. No. 1108-2. The key terms of the Settlement Agreement are as follows:

### A.    The Settlement Class

The proposed Settlement Class is comprised of those persons who, on or after May 18, 2007, and through and including the date of final approval, received a telemarketing call made by Monitronics or a Monitronics Authorized Dealer, or an Authorized Dealer's lead generator or subdealer: (a) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or pre-recorded voice, (b) to a residential telephone number through the use of an artificial or pre-recorded voice, or (c) to a cellular or residential number registered on

the national Do Not Call Registry more than once within any twelve-month period. Dkt. No.
1108-2, Settlement Agreement § 1.28. Plaintiffs' experts have analyzed calling data received
through discovery and identified 7,858,232 telephone numbers to which calls were placed that
allegedly violated the TCPA, and which Plaintiffs assert were on behalf of Monitronics. Dkt. No.
1108-1, ¶ 17.

## B.    Settlement Relief

The Settlement Agreement requires Monitronics to pay $28 million into a Settlement
Fund. Settlement Agreement §§ 1.31, 2.1. The Settlement Fund will cover all of the following as
approved by the Court: payments to Settlement Class Members who timely file valid claims;
Class Counsel's fees of $9,333,333 and expenses totaling $602,909.33; costs of administration
currently estimated to be $4,780,000; and the service awards described below. *Id.* §§ 2.1, 8.1,
8.4. If any amounts remain in the Settlement Fund as a result of uncashed checks, the parties will
redistribute the funds to Settlement Class Members who cashed their checks so long as it is
administratively feasible to do so. *Id.* § 2.3(c). Any amounts remaining in the Settlement Fund,
including any amounts remaining after a second distribution will be distributed as a *cy pres*
award to the Consumer Federation of America. *Id.* Not a penny of the Settlement Fund will
revert to Monitronics.

### 1.    Settlement Class Member Payments

Each Settlement Class Member who submits a timely valid claim will receive an equal
share of the Settlement Fund, after deduction for notice and administration costs, Court approved
attorneys' fees and expenses, and Plaintiffs' service payments. If the Court grants the attorneys'
fees, litigation expenses, and service payments as requested, approximately $13,170,746 will be
distributed to Settlement Class Members. Plaintiffs estimate that each Settlement Class Member

who submits a claim will receive approximately $38. Declaration of Jonathan Marshall in Support of Final Approval ("Marshall Decl."), Exhibit C to Plaintiffs' Motion, ¶ 4.

### 2.      Plaintiffs' Service Awards

The Settlement Agreement provides that Class Counsel may request that the Court approve the following service awards to Plaintiffs: $50,000 each to Plaintiffs Mey and Charvat; $6,012 to Plaintiff Bennett; and $3,500 each to Plaintiffs Dolemba and Janet and Michael Hodgin. Settlement Agreement § 8.4; *see also* Dkt. No. 1141, Memorandum in Support of Motion for Attorneys' Fees, Costs, and Service Awards, at 11.

### 3.      Attorneys' Fees and Litigation Expenses

The Settlement Agreement also provides that Class Counsel may request that the Court approve an award of attorneys' fees and litigation expenses. Settlement Agreement § 8.1. On January 18, 2018, Class Counsel filed a fee petition requesting an attorneys' fee award of one-third of the Settlement Fund, or $9,333,333 to compensate them for the work already performed in the case and the risk they undertook taking this action on a contingent basis. Dkt. No. 1140. The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. The fee application also seeks reimbursement for the out-of-pocket costs Class Counsel have incurred prosecuting this action, in the amount of $602,909.33. *Id.*

### C.      Release

In exchange for settlement benefits, Plaintiffs and Settlement Class Members will release Monitronics from claims related to unlawful telemarketing that could have been asserted in the litigation. Settlement Agreement § 3. The release does not extend to the other defendants in the action, Alliance Security, Inc., UTC, or Honeywell. *Id.* §§ 1.23, 3.1.[4] Settlement Class Members

---

[4] Defendant ISI Alarms NC, Inc., is not mentioned in the Settlement Agreement because it no longer exists.

are free to pursue claims against those entities for any telemarketing calls they received. And, the release applies only to telemarketing — and not debt collection — calls. *Id.* § 1.22. Persons who received debt collection calls by or on behalf of Monitronics remain free to pursue claims arising from those calls.

## D.      Notice Program

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Court-ordered individual emailed and mailed notice, along with publication notice. The settlement administrator has completed all notice obligations. Exhibit B, Peak Decl. In total, out of 7,519,608 identified class members, the settlement administrator successfully delivered 6,779,706 notices by email or mail. *Id.* ¶¶ 7, 15. Mailed notices that were returned by the postal service were remailed where possible to an updated address after they were returned by the U.S. Postal Service. The publication notice was published in People and Better Homes and Gardens, and appeared in multiple online media campaigns. *Id.* ¶¶ 18-23.

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## IV.      THE SETTLEMENT MERITS FINAL APPROVAL

## A.      The Settlement Is Fair, Reasonable And Adequate

The settlement of a class action must be approved by the court. Fed. R. Civ. P. 23(e); *Scardelletti v. Debarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927

F.2d 155, 158 (4th Cir. 1991); *Dijkstra v. Carenbauer*, C.A. No. 5:11–CV–00152, 2016 WL 6804980, at *1 (N.D. W. Va. July 12, 2016); *Smith v. Res-Care, Inc.,* No. CV 3:13-5211, 2015 WL 6479658, at *4 (S.D. W. Va. Oct. 27, 2015). The court may do so only after a hearing and on finding that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

Such approval typically involves a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D. N.C. 1992); *Smith v. Res-Care, Inc.,* 2015 WL 6479658, at *4 (reaffirming two-stage approval process described in *Horton*).

Preliminary approval of the Settlement Agreement has already been granted. At this final approval stage, the Fourth Circuit has adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Groves v. Roy G. Hildreth and Son, Inc.*, 2011 WL 4382708, at *4 (S.D. W. Va. Sept. 20, 2011).

A class settlement is fair when it is "reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Bicking v. Mitchell Rubenstein & Assocs.,* No. 11-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011). The court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible

8

approval." *Smith v. Res-Care, Inc.*, No. CV 3:13-5211, 2015 WL 461529, at *3 (S.D. W. Va. Feb. 3, 2015) (*citing* Manual for Complex Litigation, § 30.44 (1985).

In evaluating the fairness of a proposed settlement, the court should consider these factors: (1) the posture of the case at the time the settlement is proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *4; *Loudermilk Services, Inc. v. Marathon Petroleum Co. LLC*, C.A. No. 3:04-0966, 2009 WL 728518, at *2 (S.D. W. Va. Mar. 18, 2009).

In determining adequacy, the relevant considerations include: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and likelihood of recovery of a litigated judgment; and (5) the degree of opposition to the settlement. *Scardelletti*, 43 Fed. Appx. at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Groves*, 2011 WL 4382708, at *5; *Loudermilk Servs., Inc.*, 2009 WL 728518, at *2.

All of these factors weigh strongly in favor of final approval.

### 1.    The Advanced Posture of the Case And The Extensive Discovery Conducted By The Time Of Settlement Support Approval

The parties must have engaged "in sufficient investigation of the facts to enable the court to intelligibly make an appraisal" of the fairness of a proposed class settlement. *Dijkstra,* at *2, *citing Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999). Here, the parties exceed this standard by a wide margin. Settlement was reached after more than six years of litigation.

Discovery has been comprehensive, involving the litigants and multiple third parties, and has been sufficiently adversarial to show "an aggressive effort to move towards trial." *Dijkstra,* at *2 (*citing Martens v. Smith, Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)). Monitronics produced hundreds of thousands of pages of documents. Dkt. No. 1108-1, ¶ 9. Plaintiffs served forty-five third party subpoenas, propounded fifteen sets of discovery, and took twenty-three depositions. In addition, the parties briefed over thirty substantive motions, including multiple motions to dismiss and motions for summary judgment. *Id.* ¶ 10. Finally, both parties retained multiple experts to review the calling data obtained in the case, which gave them additional insight, especially as to class certification prospects. *Id.*

Through this extensive discovery and dispositive motions practice, both the parties and the Court have sufficient information to appraise the fairness of settlement terms. That knowledge base, coupled with the parties' respective assessments of the relative strengths and weaknesses of their legal positions, all weigh in favor of granting final approval, because they ensure that the parties and the Court are able to fairly evaluate the case.

**2.      The Negotiation Process Was At All Times Arms' Length And Was Overseen By An Experienced Mediator**

"[A]bsent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Dijkstra*, at *2, citing Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992); *Muhammad v. Nat'l City Mortgage, Inc.* C.A. No. 2:07-0423, 2008 WL 5377783, at *4 (S.D. W. Va. Dec. 19, 2008). Here, the circumstances surrounding the negotiation of the Settlement demonstrate, even without a presumption, that the negotiations were wholly in good faith and without any suggestion of collusion. It is clear from the six-year history of the case, the extent of the motions practice and discovery, that the Settlement was reached only after long running, adversarial

10

proceedings, followed by protracted negotiations that spanned three days of mediation.

The fact that the negotiations were conducted with the assistance of experienced mediator Bruce Friedman of JAMS, provides further support that they were of an arm's length, non-collusive nature.

### 3. Class Counsel Are Experienced TCPA Litigators

"The opinion of experienced class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration." *Dijkstra* at *2; *Deem v. Ames True Temper, Inc*., C.A. No. 6:10–cv–01339, 2013 WL 2285972, at *2 (S.D. W. Va. May 23, 2013). "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Dijkstra,* at *2, *citing Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000); *see also In re Compact Disc Litig.,* 216 F.R.D. 197, 212 (D. Me. 2003).

Here, the Settlement Agreement is the result of extensive negotiations between seasoned defense counsel and experienced class action attorneys who are skilled and experienced in litigating and resolving class actions in general, and in TCPA class actions in particular, and are extremely familiar with all of the factual and legal issues of this case. Given the breath of their experience, *see* Counsel Declarations, Dkt. Nos. 1140-1 to 1140-5, their opinion should weigh strongly in favor of approval.

### 4. The Relative Strength Of The Plaintiffs' Case On The Merits And The Existence Of Any Difficulties Of Proof Or Strong Defenses The Plaintiffs Are Likely To Encounter If The Case Goes To Trial

While Plaintiffs and the class believe they would prevail on class certification and at trial, Monitronics strongly argued otherwise. Had the case proceeded further, the class faced the possibility that the Court could find the class not sufficiently cohesive to warrant certification.

11

And, even if the Court granted class certification, on the merits Monitronics was adamant that it is not vicariously liable for calls made by its dealers and sub-dealers. *See* Dkt. No. 975 at 17. This Court already granted summary judgment on vicarious liability to UTC and Honeywell, a ruling affirmed by the Court of Appeals, raising a concern as to whether any recovery would be possible against Monitronics. If the Court were to adopt a narrow view of Monitronics' vicarious liability and grant its summary judgment motion, the value of this case to class members would drop to zero.

Even if Plaintiffs had survived summary judgment, the only viable source of recovery for the class was Monitronics, given the weak financial condition of the dealer Defendants who placed the telemarketing calls (highlighted by Alliance's recent bankruptcy). Marshall Decl. ¶ 8. Although Monitronics had purchased insurance, its carriers disputed that the policies provided any coverage for TCPA claims. *Id.* Monitronics likely could not withstand a judgment in the hundreds of millions of dollars. Given its liability exposure, bankruptcy was a distinct possibility for Monitronics.

While Plaintiffs believe strongly in their case, ultimately the essence of any settlement is compromise. *See Rolland*, 191 F.R.D. at 11. For this reason, in evaluating the adequacy of a settlement, the trial court should not decide the merits, or proceed from the assumption that victory is 100% assured and that all claimed damages are properly recoverable. *See In re Compact Disc Litig.*, 216 F.R.D. at 211 (the role of the court is not to "second-guess" the settlement but to decide whether its overall terms are reasonable).

### 5.   The Anticipated Duration And Expense Of Additional Litigation

The complexity, expense, and duration of litigation are factors that support approval of a settlement. *Dijkstra* at *3, *citing In re Corp. Litig.*, 264 F.3d 201, 231, 233 (3d Cir. 2001); *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as

one of nine factors in determining the fairness of settlement). This case has been pending for over six years. The parties could have continued to litigate this complex MDL to judgment and then through appeal, taxing the resources of the litigants (including insurance proceeds) and the courts. Both parties were facing the prospect of a contested class certification hearing and likely more years of litigation to follow. Instead, the parties elected to forgo the expense of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account, once they were able to obtain sufficient information regarding the class and the class size.

**6.      The Solvency Of The Defendants And Likelihood Of Recovery On A Litigated Judgment**

Monitronics' ability to pay a substantial judgment was an important consideration in the negotiation of this Settlement. If Plaintiffs were successful and prevailed on the merits, they would face the challenge of collecting a judgment that could have been in the hundreds of millions, if not billions, of dollars, given the large number of calls at issue. Monitronics has limited assets and its insurance carriers disputed coverage. Marshall Decl. ¶ 8. The dealer Defendants' financial viability is even weaker. Plaintiffs faced the very real possibility that Monitronics may have declared bankruptcy if a large judgment were entered against it. Given these circumstances, the $28 million settlement, which is within Monitronics' insurance "policy limits," represents a strong result for the class.

**7.      Other Factors: The Settlement Amount Is Reasonable In Light Of The Value Of All The Claims Asserted And The Substantial Risks Of Further Litigation**

As described in Plaintiffs' application for attorneys' fees and service awards, the settlement amount and per claimant payment of approximately $38 is in line with other TCPA settlements approved across the country. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d

781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* Dkt. Nos. 109 at 10, 116 at 6, and 137). *See also Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher).

Furthermore, unlike many class actions, Plaintiffs are only releasing one Defendant — Monitronics — from liability for the millions of calls placed to Settlement Class Members. Settlement Class Members will be able to receive a payment from this Settlement, yet remain free to pursue or continue to pursue claims against any other entity involved with the calls, including the companies that actually made, ordered or otherwise benefited from the telemarketing calls.

The reaction of the class members to the Settlement supports final approval as well. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159 (small number of objections weighs in favor of approval); *Teresa M. Speaks v. U.S. Tobacco Coop., Inc.*, No. 5:12-cv-729-D, 2018 WL 988080, at *29 (E.D. N.C. Feb. 20, 2018) (finding the "degree of opposition" factor favored settlement

where only 72 class members objected and 84 class members opted out of a 800,000-person

class); *Seaman v. Duke Univ.*, No. 1:15-cv-462, 2018 WL 718961, at \*3 (M.D. N.C. Jan. 4,

2018) (noting "great weight" district courts give to the adequacy of a settlement as reflected by

their opposition or non-opposition to the settlement). The reaction of the class has been

overwhelmingly positive, with only 64 exclusions and five objections out of the more than 7.5

million class members for whom mail or email addresses were available. Peak Decl. ¶¶ 7, 28-29.

**B.      The Settlement Class Should Be Certified**

In granting preliminary approval, the Court provisionally certified the Settlement Class

for settlement purposes. For all of the same reasons contained in Plaintiffs' preliminary approval

memorandum, the Settlement Class meets the requirements of Rule 23, and should be certified

for settlement purposes.

**C.      All Objections Should Be Denied**

Only five Settlement Class Members have objected to the Settlement. Plaintiffs have

responded to those objections under separate cover. For the reasons set forth in Plaintiffs'

response, all of the objections should be overruled.

## V.      CONCLUSION

For all of the reasons stated above, Plaintiffs request that the Court grant this Motion and

enter the Proposed Final Approval Order, approving the parties' proposed Settlement Agreement

in full.

Dated: March 22, 2018.

Respectfully Submitted,

BAILEY & GLASSER LLP

By: /s/ Jonathan R. Marshall

Jonathan R. Marshall
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: jmarshall@baileyglasser.com

*Liaison Counsel*

Beth E. Terrell
Mary B. Reiten
Jennifer Rust Murray
TERRELL MARSHALL LAW
   GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: mreiten@terrellmarshall.com

John W. Barrett
Ryan M. Donovan
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: jbarrett@baileyglasser.com
Email: rdonovan@baileyglasser.com

*Co-Lead Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2018, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

*Liaison Counsel for Defendants*:

        Jeffrey A. Holmstrand
        GROVE HOLMSTRAND & DELK, PLLC
        44-1/2 15th Street
        Wheeling, West Virginia 26003
        Telephone: (304) 905-1961
        Facsimile: (304) 905-8628
        Email: jholmstrand@grovedelklaw.com

*Co-Lead Counsel for Defendant Monitronics, Inc.*:

        Jeffrey A. Holmstrand
        GROVE HOLMSTRAND & DELK, PLLC
        44-1/2 15th Street
        Wheeling, West Virginia 26003
        Telephone: (304) 905-1961
        Facsimile: (304) 905-8628
        Email: jholmstrand@grovedelklaw.com

        Meryl C. Maneker
        WILSON TURNER KOSMO LLP
        550 West C Street, Suite 1050
        San Diego, California 92101
        Telephone: (619) 236-9600
        Facsimile: (619) 236-9669
        Email: mmaneker@wilsonturnerkosmo.com

I further certify that I caused foregoing to be mailed by the U.S. Postal Service, from

Charleston, West Virginia, postage prepaid, to the following:

        Craig Cunningham
        5543 Edmondson Pike, Suite 248
        Nashville, Tennessee 37211

Bryan Anthony Reo
7143 Rippling Brook Lane
Mentor, Ohio 44060

Charles Rollman
1310 Lyric Pt
Colorado Springs, CO  80906

Holly Rae Latimore, LPN/IV
1725 Manor Place, Apt. 1
Dayton, OH 45406

Geneva Meloy
1490 Arcadia Road
Kent, Ohio 44240

Myrdis Foster
2740 Duncanville Rd., Apt. 725
Dallas, TX  75211

Salene Mazur Kraemer
Mazurkraemer Business Law
3364 Main Street
Weirton, WV  26062

John W. Davis
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA 92101

Counsel to Catherine Smith


/s/ Beth E. Terrell
Beth E. Terrell
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com